IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

COLUMBIA DIVISION

| | | |
|---|---|---|
| Red Light, LLC, | ) | |
| | ) | C/A No. 3:05-3103-MBS |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **OPINION AND ORDER** |
| American Traffic Solutions, Inc., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Plaintiff Red Light, LLC filed this action in the Court of Common Pleas for Richland County, South Carolina on October 4, 2005, alleging that Defendant American Traffic Solutions, Inc. breached a contract entered into between the parties. Defendant removed the action on the basis of diversity jurisdiction on November 3, 2005. See 28 U.S.C. §§ 1332, 1441.

This matter is before the court on Defendant's motion to dismiss or transfer venue, which motion was filed November 14, 2005. Plaintiff filed a memorandum in opposition to Defendant's motion on November 28, 2005, to which Defendant filed a reply on December 9, 2005. The court held a hearing on February 6, 2006.

I. <u>FACTS</u>

Defendant sells and services red light camera systems for the purpose of enforcing red light traffic violations. Defendant is a corporation organized in Kansas and maintaining its principal place of business in Arizona. In early 2005, Defendant contacted Jay Specter, managing partner of Plaintiff, a South Carolina limited liability company, for the purpose of marketing Defendant's products and services in a designated territory comprised of a number of states primarily located

along the east coast.  The parties thereafter entered into a Business Representation Agreement ("BRA") on March 1, 2005.  In the BRA, Plaintiff agreed to "use its best efforts to market and promote [Defendant's] Products and Services, to maximize the Sale of the Products and Services, and to maintain the goodwill of the Products and Services throughout the Territory."  Business Representation Agreement, ¶ 2.3.1.  In exchange, Defendant agreed to pay Plaintiff commissions of six percent gross revenue from any sales of Defendant's products or services or monthly lease amounts or fees from a customer generated in the specified territory.  Id. ¶ 6.1.  At the insistence of Defendant, the parties negotiated a forum selection clause, which provides:

**14.8    Applicable Law**

> This Agreement shall be governed by and construed in accordance with the laws of Arizona, United States of America, and the parties agree to submit to the jurisdiction of the courts of Arizona, United States of America.

Id.

The initial term of the BRA was five years.  Id. ¶ 3.1.  However, either party could terminate the BRA on grounds of default in the performance of or compliance with any provisions of the BRA, upon written notice and failure of the defaulting party to cure.  Id. ¶ 12.1.  Defendant further reserved the right to terminate the BRA in the event (1) Plaintiff "acts or conducts itself in a manner which does or might significantly harm" Defendant's reputation or "makes use of any [of Defendant's] rights contrary to the provisions of" the BRA; (2) Defendant "deems it impossible or difficult to continue to transact business with [Plaintiff] due to any substantial change in [Plaintiff's] organization, management, ownership, personnel, or financial position"; (3) Plaintiff "fails to consistently use his/its best endeavors or fails to reasonably expand the market and promote the sale of the Products and Services"; or (4) Plaintiff "attempts to assign or assigns this Agreement to

2

another person or entity[.]" Id. ¶ 12.3.

The parties attached to the BRA a nondisclosure agreement (the Confidential Information and Intellectual Property Agreement, or "NDA") by which Defendant and Specter agreed to keep confidential information relating to, among other things, Defendant's "parking systems, toll and traffic violation enforcement management, revenue collection processing systems & software, related know-how, and transaction processing operations." Confidential Information and Intellectual Property Agreement, p. 1. The NDA specifically provided:

> . . . This Agreement shall be governed by the laws of Arizona, and any dispute arising out of this Agreement will be adjudicated in Maricopa County, Arizona, and the parties hereby waive any and all jurisdiction and venue objections to such adjudication. . . .

Id. ¶ 7.

Defendant terminated the BRA on September 5, 2005. According to Defendant, Plaintiff incurred financial obligations on behalf of Defendant without Defendant's knowledge or consent, hid the debts from Defendant, and allowed certain bills to fall into delinquency, all of which allegedly caused significant harm to Defendant's financial reputation. Reply in Support of Defendant's Motion to Dismiss or Transfer Venue, p. 5. Plaintiff contends Defendant fabricated the reason for termination, and that the true reason for terminating the BRA was to avoid paying Plaintiff for the substantial work it had done. Complaint, ¶¶ 10, 11.

## II. DISCUSSION

A.    Motion to Dismiss

Defendant seeks to dismiss with within action pursuant to Fed. R. Civ. P. 12(b)(3), which provides, among other things, that a defendant may assert by motion the defense of improper venue.

3

Dismissal is an appropriate procedure when a court is faced with a valid and enforceable forum selection clause that provides the case should be brought in another forum. Atlantic Floor Svcs., Inc. v. Wal-Mart Stores, Inc., 334 F. Supp. 2d 875, 880 (D.S.C. 2004) (citing Allen v. Lloyd's of London, 94 F.3d 923, 928 (4th Cir. 1996)).

Federal law governs a district court's decision to enforce or not enforce a forum selection clause. Scott v. Guardsmark Security, 874 F. Supp. 117, 120 (D.S.C. 1995) (citing Stewart Organization v. Ricoh Corp., 487 U.S. 22 (1988)). Forum selection clauses are prima facie valid and enforceable when made in arms-length transactions by sophisticated business entities absent some compelling and countervailing reason. Id. (citing Sterling Forest Assoc. v. Barnett-Range Corp., 840 F. 2d 249, 251 (4th Cir. 1988)). However, "[w]hen only jurisdiction is specified the clause will generally not be enforced without some further language indicating the parties' intent to make jurisdiction exclusive." Guy F. Atkinson Const. Co. v. Ohio Municipal Elec. Generation Agency Joint Venture, 943 F. Supp. 626 (S.D.W. Va. 1996) (citing cases). If mandatory venue language is not employed, the clause need not be enforced. See id.

Plaintiff contends that Defendant's motion to dismiss should be denied because the BRA is not enforceable. The court agrees. The forum selection clause at issue in this case is virtually identical to that analyzed by the Court of Appeals for the Second Circuit in John Boutari & Son v. Attiki Importers & Distributors, Inc., 22 F.3d 51 (2d Cir. 1994). In Attiki Importers, the forum selection clause in question provided:

> The Agreement shall be governed and construed according to the Laws of Greece. Any dispute arising between the parties hereunder shall come within the jurisdiction of the competent Greek Courts, specifically of the Thessaloniki Courts.

The Attiki Importers court determined that the "[a]lthough the word 'shall' is a mandatory

4

term, here it mandates nothing more than that the [Greek courts] have jurisdiction." Id. at 53 (citing

cases) (internal quotation marks omitted).   According to the Second Circuit, "'an agreement

*conferring* jurisdiction in one forum will not be interpreted as *excluding* jurisdiction elsewhere

unless it contains specific language of exclusion[.]'" Id. (quoting City of New York v. Pullman, Inc.,

477 F. Supp. 438, 442 n.11 (S.D.N.Y. 1979)).   This is because "'[t]he normal construction of the

jurisdiction rules includes a presumption that, where jurisdiction exists, it cannot be ousted or

waived absent a clear indication of such a purpose[.]'" Id. (quoting Pullman, 477 F. Supp. at 443).

The Honorable G. Ross Anderson addressed a similar forum selection clause in Scott.  In that

case, the forum selection clause specified that "[e]ach party consents to the jurisdiction and venue

of the U.S. District Court for the District of Tennessee . . . ." Scott, 874 F. Supp. at 120.  Judge

Anderson held that:

> While this provision might establish that venue in Tennessee is proper, it does not
> establish that venue in South Carolina is not proper.  A permissive forum selection
> clause does not preclude the selection of another forum unless the agreement
> specifies the preselected forum as exclusive. . . . [C]onsenting to venue in a particular
> locale does not make venue improper in another locale.

Id. at 120-21 (internal citations omitted).

Defendant contends that the court should construe the forum selection clause in the BRA

together with the forum selection clause in the NDA mandating that any disputes "will be

adjudicated in Maricopa County, Arizona."  The court declines to do so.  The controlling agreement

is the one that forms the parties' contractual relationship and establishes their mutual obligations.

Moreover, the mandatory forum selection clause in the NDA is incompatible with the permissive

forum selection clause contained in the primary agreement.  "Where contracts are put into several

instruments, each of which has a sensible meaning and may have a full operation by itself, it would

be a hazardous assumption to put them together for the purpose of making them mean, as one, differently from what they could in this separate state."  17A Am. Jur. 2d, <u>Contracts</u>, § 388.

The court concludes that the BRA forum selection provision is permissive and does not exclude jurisdiction in any forum except Arizona.[1]  S.C. Code Ann §15-7-120(A) provides that a cause of action may proceed in a South Carolina court as an alternative to the forum provided in a contractual provision.  Jurisdiction in South Carolina is appropriate.  Defendant's motion to dismiss pursuant to Rule 12(b)(3) is **denied**.

B.    <u>Motion to Transfer</u>

A district court may transfer a civil action to any other district or division where it might have been brought.  <u>See</u> 28 U.S.C. § 1404.  Section 1404(a) places discretion in the district court to adjudicate motions for transfer according to an "individualized, case-by-case consideration of convenience and fairness." <u>Stewart Organization, Inc. v. Ricoh Corp.</u>, 487 U.S. 22, 29 (1988) (quoting <u>Van Dusen v. Barrack</u>, 376 U.S. 612 622 (1964)).  The court  must "weigh in the balance the convenience of the witnesses and those public interest factors of systemic integrity and fairness that, in addition to private concerns, come under the heading of 'the interest of justice.'" <u>Id.</u> at 30.

Plaintiff's complaint "might have been brought" in the United States District Court for the District of Arizona.  In an action where federal jurisdiction is based solely on diversity, venue is

---

[1] For examples of mandatory forum selection clauses, <u>see</u> <u>Sterling Forest Assocs., Ltd. v. Barnett-Range Corp.</u>, 840 F.2d 249 (4th Cir. 1988) ("the parties agree that in any dispute jurisdiction and venue shall be in California"); <u>Atlantic Tele-Network, Inc. v. Inter-American Dev. Bank</u>, 251 F. Supp. 2d 126 (D.D.C. 2003) (holding that a forum selection clause employing the word "shall" and citing to a specific locale for adjudication of disputes represents a mandatory selection clause); <u>Cable-La, Inc. v. Williams Commc'ns, Inc.</u>, 104 F. Supp. 2d 569 (M.D.N.C. 1999) ("any lawsuit to enforce the contract shall be brought in Tulsa County, Oklahoma, or in the United States District Court for the Northern District of Oklahoma").

6

proper in the judicial district where the defendant resides or where a substantial part of the events giving rise to the claim occurred. 28 U.S.C. § 1391(a). The court turns to the factors set forth in § 1404(a).

1.    Convenience of the parties. Defendant contends that Arizona is the more convenient forum for the parties because its corporate headquarters is located in Arizona, as well as all its operational, payroll, administrative, and information technology relevant to the case. Defendant further notes that any documents it possesses relating to the subject matter of the within action are located in Arizona. In addition, Defendant notes that Plaintiff's representative, Jay Specter, traveled twice to Arizona and had regular communication with persons in the Arizona facility. Plaintiff contends, however, that Defendant can better bear the expense and hardship of having representatives travel from Arizona, as well as having any administrative processes transported to South Carolina, either via paper copies or electronic format. The court finds this factor weighs in favor of Plaintiff.

2.    Convenience of the witnesses. Defendant contends that, with the exception of Jay Specter, none of the witnesses resides in South Carolina, and none of the events that led to the termination of the BRA occurred in South Carolina. Plaintiff asserts that, in order to demonstrate that it fulfilled its obligations under the BRA, it will be necessary to obtain testimony and documents from city and county officials in many of the states covered under the BRA. Plaintiff's potential witnesses "are almost all on either the east coast or in the south." Plaintiff's Opposition to Defendant's Motion to Dismiss or Transfer Venue, Exh. C (Affidavit of Jay Specter, ¶ 5). This factor weighs in favor of Plaintiff.

3.    Interests of justice. According to Defendant, transfer to Arizona best serves the

7

interests of justice because an Arizona district court is more familiar with Arizona law than this court. Defendant also contends that the District of South Carolina docket is substantially more congested than the District of Arizona. According to Defendant, the District of South Carolina received 24,096 filings and 2,742 "weighted filings" per judge in the twelve month period ending June 30, 2005.[2] In contract, the District of Arizona received only 9,618 filings and 643 "weighted filings" per judge during that same period. The statistics cited by Defendant further indicate that the backlog of cases per judge in the District of South Carolina numbers 412, in comparison with 525 cases pending per judge in Arizona.[3]

The court notes that it will be in the same position as an Arizona district court with respect to applying state law regarding contracts. In addition, the data offered by Defendant suggest that the docket is less congested in South Carolina than in Arizona. This factor does not weigh in favor of Defendant.

### III. CONCLUSION

Unless the balance of equities tips strongly in favor of the defendant, the plaintiff's choice of forum rarely should be disturbed. See Scott, 874 F. Supp. at 120 (citing Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 509 (1947)). The balance of equities does not tip in favor of Defendant. Thus, for the

---

[2] The 2,742 "weighted filings" per judge statistic cited by Defendant appears to be incorrect. Current statistics for the twelve-month period ending 2005 indicate 514 "weighted filings" per South Carolina judgeship. See http://jnet.ao.dcn/cgi-bin/cmsd2005.pl.

[3] Judicial Caseload Profile Reports for Arizona and South Carolina for the twelve-month period ending September 30, 2005 indicate that Arizona had total civil filings per judge of 376 and 549 pending cases per judge; South Carolina had total civil filings per judge of 397 and 396 pending cases per judge. The median time from filing to trial in Arizona is 31 months; in South Carolina, the median time from filing to trial is 21 months. The median time from filing to disposition of civil cases in Arizona is 10.2 months; in South Carolina, the median time from filing to disposition is 9.0 months. See id.

8

reasons stated, Defendant's motion to dismiss or transfer is **denied**.

       **IT IS SO ORDERED**.


                                      /s/ Margaret B. Seymour
                                      United States District Judge

Columbia, South Carolina

February 23, 2006.